UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | | |
|---|---|---|
| DOMINQUE VALLIER | * | CIVIL ACTION NO. 16-1437<br>Section P |
| VERSUS | * | JUDGE ELIZABETH E. FOOTE |
| PAULA MILLWEE, ET AL. | * | MAG. JUDGE KAREN L. HAYES |

### REPORT AND RECOMMENDATION

Before the undersigned magistrate judge, on reference from the District Court, is a motion for summary judgment [doc. # 34] filed by defendants, LaShonia Ferguson and Paula Millwee, seeking dismissal of Plaintiff's claims. For reasons set forth below, it is recommended that the motion be GRANTED.

### Background

On October 13, 2016, Plaintiff, Dominque Vallier, filed his complaint [doc. #1] seeking relief under 28 U.S.C. § 1983, seeking damages for denial of medical treatment and negligence. On December 27, 2017, Defendants filed the instant motion for summary judgment [doc. #34]. Defendants assert that the complaint fails to state a constitutional violation and Defendants are entitled to qualified immunity. Plaintiff filed his opposition [doc. #36]. The matter is ripe.

### Standard of Review

Summary judgment is appropriate when the evidence before the court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id.*

In evaluating the evidence tendered by the parties, the court must accept the evidence of the non-movant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. While courts will "resolve factual controversies in favor of the non-moving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). There can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-323. The non-moving party may not rely merely on the allegations and conclusions contained within the pleadings; rather, the non-movant "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). The non-movant does not satisfy his burden merely by demonstrating some metaphysical doubt as to the material facts, by setting forth conclusory allegations and unsubstantiated assertions, or by presenting but a scintilla of evidence. *Little*, 37 F.3d at 1075 (citations omitted).

Moreover, "summary judgment is appropriate in *any* case 'where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.'" *Little, supra* (citation omitted) (emphasis in original). In sum, "[a]fter the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Mississippi River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000) (citation omitted).

**Relevant Facts**[1]

1. Plaintiff was an inmate sentenced to the custody of the Louisiana Department of Public Safety and Corrections ("LDPSC") and was confined at David Wade Correctional Center ("DWCC") at all times relevant to the instant litigation. *See* Statement of Undisputed Facts, doc. #34-2, p. 1. ¶ 1; Response to State of Facts, doc. #36-18, p. 1, ¶ 1.

2. Defendants, LeShonia Ferguson and Paula Millwee, were LDPSC employees during this time. *See* Statement of Undisputed Facts, doc. #34-2, p. 1. ¶¶ 2 & 3; Response to Statement of Undisputed Facts, doc. #36-18, p. 1, ¶¶ 2 & 3. Nurse Millwee was the Director of Nursing at DWCC during this time. *See* Deposition of Paula Millwee, doc. #36-9, p. 13, lines 1-11.[2]

---

[1] The court's recitation of relevant facts includes Defendants' Statement of Uncontested Material Facts, and is heavily supplemented by the court's independent review of all evidence submitted by the parties and the record. Of course, to the extent there is a conflict in the evidence in the present context, the court necessarily credits Plaintiff's version of events.

[2] Nurse Millwee directly testifies that she was the Director of Nursing at DWCC on November 25, 2015. The undersigned concludes that, making all reasonable inferences in Plaintiff's favor and based on Nurse Millwee's deposition testimony, it appears Nurse Millwee was the Director of Nursing at DWCC at all relevant times.

3.  Between December 2015 and April 2016, Plaintiff submitted sick call requests on Health Care Request Forms for medical attention, complaining of back and knee pain, and blurred vision associated with Juvenile Rheumatoid Arthritis ("JRA"). *See* Statement of Undisputed Facts, doc. #34-2, p. 1. ¶ 3[3]; Response to Statement of Undisputed Facts, doc. #36-18, p. 1, ¶ 4.

4.  Plaintiff submitted an Administrative Remedy Procedure ("ARP") alleging constitutional rights violations while confined at DWCC. *See* Statement of Undisputed Facts, doc. #34-2, p. 1. ¶ 4; Response to Statement of Undisputed Facts, doc. #36-18, p. 1, ¶ 5.

5.  While the instant lawsuit was pending, Plaintiff was transferred to the Elayn Hunt Correctional Center in St. Gabriel, Louisiana. *See* Statement of Undisputed Facts, doc. #34-2, p. 1. ¶ 5; Response to Statement of Undisputed Facts, doc. #36-18, pp. 1-2, ¶ 6.

6.  Plaintiff was first diagnosed with JRA in 2006 at Our Lady of the Lake Hospital in Baton Rouge, Louisiana. *See* Deposition of Plaintiff, doc. #36-7, p. 3, lines 7-14; Plaintiff's Medical Records, doc. #36-15, p. 1.

7.  Prior to Plaintiff's being incarcerated, his JRA was treated with prednisone and folic acid methotrexate. *See* Deposition of Plaintiff, doc. #36-7, p. 17, lines 2-4.

---

[3] Defendants' Statement of Undisputed Facts contains a typographical error in that both the third and fourth paragraphs are numbered "3)" and the fifth, sixth, and seventh paragraphs are numbered "4)," "5)," and "6)," respectively. Here, the Court refers to the second paragraph numbered "3)" and all references are to the paragraphs as numbered in Defendants' State of Undisputed Facts.

8. Plaintiff was incarcerated at Allen Correctional Center ("ACC") from 2011 until he was transferred to DWCC on November 25, 2015. *See* Deposition of Plaintiff, doc. #36-7, p. 2, lines 20-22.

9. Plaintiff's JRA was treated with naproxen while he was incarcerated at ACC and Plaintiff never experienced JRA-related complications during that time. *See* Deposition of Plaintiff, doc. #36-7, p. 17, lines 2-24.

10. Nurse Ferguson performed a health screening of Plaintiff when he arrived at DWCC, at which time he informed Nurse Ferguson that he suffered from arthritis. *See* Intra-Institutional Health Screening, doc. #34-5, p. 2.

11. On December 22, 2015, Plaintiff submitted a Health Care Request Form ("HCR Form") complaining of arthritis pain in his back and knee. Plaintiff was seen by a DWCC nurse, who referred him to a medical doctor. *See* Health Care Request Form, doc. #34-5, p. 3.

12. On December 28, 2015, Plaintiff submitted an HCR Form complaining of pain in his chest, which began after performing push-ups. Plaintiff was seen by Nurse Ferguson, who directed him to avoid strenuous activity. *See* Health Care Request Form, doc. #34-5, p. 4.

13. On January 6, 2016, Dr. Pamela Hearn, M.D., saw Plaintiff. *See* Sick/Doctor's Call Sheet, doc. #34-5, p. 5. Plaintiff informed Dr. Hearn that he had a history of JRA, which had previously been treated with prescription medicine. *Id.* Plaintiff informed Dr. Hearn

that he had been diagnosed with JRA and received treatment for it at Our Lady of the Lake Hospital in Baton Rouge, Louisiana. *Id.* Plaintiff informed Dr. Hearn that he was experiencing arthritis pain in his back, leg, and knee. *Id.* Dr. Hearn executed a DWCC Physician's Order prescribing Plaintiff medication and directing DWCC to obtain Plaintiff's medical records from Our Lady of the Lake Hospital. *See* DWCC Physician's Order, doc. #34-5, p. 6.

14. On or about January 13, 2016, DWCC received Plaintiff's medical records from Our Lady of the Lake Hospital showing a medical history of rheumatoid arthritis. *See* Plaintiff's Medical Records, doc. #36-14.

15. In February 2016, Plaintiff mailed a letter to Nurse Millwee informing her that he was experiencing significant JRA-related pain and had not received proper treatment. *See* Deposition of Plaintiff, doc. #36-7, p. 7, lines 19-24. Nurse Millwee did not respond. *See id.* At p. 8, lines 4-6.

16. On February 3, 2016, Plaintiff submitted an HCR Form requesting that he receive medication to treat JRA, stating that he was in bad pain. *See* Health Care Request Form, doc. #34-5, p. 7. Plaintiff was seen by a DWCC nurse, who recommended no change in treatment. *Id.*

17. On February 15, 2016, Plaintiff submitted a sick call complaining of pain. *See* Deposition of Plaintiff, doc. #36-7, p. 7, lines 7-13. A nurse visited Plaintiff in his cell and informed him they had not yet completed their review of Plaintiff's medical

records. *Id.*

18. On February 23, 2016, Plaintiff submitted an HCR Form complaining of unbearable pain associated with JRA. *See* Health Care Request Form, doc. #34-5, p. 8. Plaintiff was seen by a DWCC nurse, who recommended no change in treatment. *Id.*

19. In March 2016, Plaintiff informed a DWCC guard that he wished to receive medical attention for pain in his eye and blurry vision. *See* Deposition of Plaintiff, doc. #36-7, p. 9, line 18 to p. 10, line 6. The guard informed Plaintiff that he would get "wrote-up" if the nurse visited him for nothing. *See id.*

20. On March 22, 2016, Plaintiff submitted an HCR Form complaining of vision loss in his left eye. *See* Health Care Request Form, doc. #34-5, p. 9. Plaintiff was seen by Nurse Ferguson, who provided him with Tylenol, Ibuprofen, and allergy medicine. *Id.*

21. On March 27, 2016, Plaintiff submitted an HCR Form complaining of a deteriorating vision in his left eye, headaches, and sensitivity to light. *See* Health Care Request Form, doc. #34-5, p. 10. Plaintiff was seen by Nurse Ferguson, who referred Plaintiff to an eye doctor. *Id.*

22. On March 30, 2016, Plaintiff was seen by an eye doctor who evaluated Plaintiff's vision. Plaintiff complained of redness in left eye. *See* Sick/Doctor's Call Sheet, doc. #34-5, p. 12. The eye doctor diagnosed Plaintiff with possible conjunctivitis in the left eye, directed Plaintiff to wear an eye patch over his left eye, prescribed an ointment for

Plaintiff's left eye, and directed that Plaintiff return in a few days. *Id.*

23. On April 4, 2016, Plaintiff returned to the eye doctor. *See* Physician's Order, doc. #34-5, p. 13. The eye doctor noted that Plaintiff's visual acuity was worsening and referred him to an ophthalmologist or the emergency room. *Id.*

24. On April 5, 2016, Plaintiff was seen by a doctor at the UHM Ophthalmology Clinic. *See* Sick/Doctor's Call Sheet, doc. #34-5, p. 15. The ophthalmologist prescribed Plaintiff eye drops. *Id.*

25. On April 6, 2016, Plaintiff returned to the UHM Ophthalmology Clinic for a follow up. *See* Sick/Doctor's Call Sheet, doc. #34-5, p. 15. The ophthalmologist referred Plaintiff to a rheumatologist. *Id.*

26. On April 12, 2016, Plaintiff submitted an HCR Form complaining of joint pain and stiffness associated with JRA. *See* Health Care Request Form, doc. #34-5, p. 17. Plaintiff was seen by a DWCC nurse, who noted that Plaintiff's appointment for the rheumatologist in Shreveport was approved and that the appointment would be scheduled that day. *Id.*

27. On April 18, 2016, Plaintiff submitted an HCR Form complaining of inflamation in his left eye and stated that the medicine he was prescribed helped reduce swelling but that his vision loss remains. *See* Health Care Request Form, doc. #34-5, p. 18. Plaintiff was seen by a DWCC nurse, who noted that Plaintiff had a follow up appointment with UHM the

following day.  *Id.*

28. On April 19, 2016, Plaintiff visited the UHM Eye Clinic.  *See* Sick/Doctor's Call Sheet, doc. #34-5, p. 19.  The staff at the UHM Eye Clinic directed several changes in Plaintiff's medication.  *Id.*

29. On April 21, 2016, Plaintiff submitted an HCR Form complaining of arthritis pain and stating that he has yet to receive treatment after making several sick calls.  *See* Health Care Request Form, doc. #34-5, p. 20.  Plaintiff was seen by a DWCC nurse, who noted that Plaintiff had a rheumatologist appointment scheduled.  *Id.*

30. On April 26, 2016, Plaintiff visited the UHS Rheumatology Clinic.  *See* Sick/Doctor's Call Sheet, doc. #34-5, p. 21.  Plaintiff's course of treatment was not altered.  *Id.*

31. Plaintiff's vision has improved and he experiences only intermittent joint pain and stiffness.  *See* Deposition of Plaintiff, doc. #36-7, p. 16, lines 9-18.

## Discussion

Section 1983 provides that any person who, under color of state law, deprives another of "any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ." *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citing 42 U.S.C. § 1983).  Section 1983, however, does not create any substantive rights; it simply provides a remedy for the rights designated therein.  *Id*.  "Thus, an underlying constitutional or statutory violation is a predicate to

liability under § 1983." *Id*. (citation omitted).

"To state a claim under § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Leffall v. Dallas Independent School District*, 28 F.3d 521, 525 (5th Cir. 1994). The first inquiry is whether Plaintiff has alleged a violation of a constitutional right at all. *Id*. *Piotrowski v. City of Houston*, 51 F.3d 512, 515 (5th Cir. 1995).

In the peculiar context of a motion for summary judgment, "once [the court has] determined the relevant set of facts and drawn all inferences in favor of the nonmoving party to the extent supportable by the record, the reasonableness of [an officer's] actions . . . is a pure question of law." *Scott*, 550 U.S. at 397, 127 S. Ct. at 1776 n. 8 (2007). Consequently, the Fifth Circuit has recognized that,

> when facts are undisputed and no rational factfinder could conclude that the officer acted unreasonably, we can hold that an officer acted reasonably as a matter of law. But when facts are disputed and significant factual gaps remain that require the court to draw several plaintiff-favorable inferences, our analysis is more tentative. In these cases, we must consider what a factfinder could reasonably conclude in filling these gaps and then assume the conclusion most favorable to the plaintiff.

*Lytle v. Bexar Cty., Tex.*, 560 F.3d 404, 411–12 (5th Cir.2009) (internal citation omitted). In other words, there is no constitutional violation if – even after crediting the version of facts most favorable to plaintiff – the officer's conduct was objectively reasonable. *Id*.

### I. Denial of Medical Care

As a convicted inmate, Plaintiff's claim for inadequate medical care is analyzed under the Eighth Amendment's prohibition against cruel and unusual punishment. To establish liability, an inmate must adduce facts which "clearly evince" a serious medical need and the prison official's deliberate indifference to it. *Hernandez v. Velasquez*, 522 F.3d 556, 561 (5th Cir. 2008) (citation

omitted); *see also Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285 (1976).

Deliberate indifference in the context of an episodic failure to provide reasonable medical care to a prisoner means that: (1) the official was aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the official actually drew that inference; and (3) the official's response indicates that the official subjectively intended that harm occur. *Thompson v. Upshur County, Tx.*, 245 F.3d 447, 458-59 (5th Cir. 2001). "[T]he failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459. "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997); *see also Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999). "[A] delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

The evidence before the Court is sufficient to create a triable issue of fact with respect to the first element of Plaintiff's claim. A reasonable jury could find that Defendants were aware that Plaintiff had JRA and that JRA is a serious medical condition that, when actively flaring up could present a substantial risk of serious harm to Plaintiff, up to blindness. *See* Deposition of Plaintiff, doc. #36-7, p.15, lines 6-9; Intra-Institutional Health Screening, doc. #34-5, p. 2; Plaintiff's Medical Records, doc. #36-14. However, there is no evidence before the Court that Defendants believed Plaintiff was at risk for serious harm or subjectively intended to harm Plaintiff. In fact, the only evidence Plaintiff submitted to the Court relevant on those issues

11

suggests otherwise. Plaintiff submitted Nurse Ferguson's testimony that she believed the redness and swelling in Plaintiff's eyes was an allergic reaction, and treated the suspected allergic reaction with allergy medication. *See* Deposition of Lashonia Ferguson, doc. #36-8, p.8, lines 6-15. While the allergy medication was unsuccessful at treating Plaintiff's symptoms, the evidence shows that soon thereafter Nurse Ferguson referred Plaintiff to a doctor. *See* Health Care Request Form, doc. #34-5, p. 10.

The evidence submitted by Plaintiff tends to show that Nurse Millwee did not consider JRA to be a chronic medical condition, knew very little about JRA, and did not know if it should be followed by a physician. *See* Deposition of Paula Millwee, doc. #36-9, p. 18, line 18 to p. 19, line 14. This evidence suggests that Nurse Millwee did not appreciate the seriousness of Plaintiff's condition, not that she intended him harm. A defendant's "[p]ersonal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) (citation omitted). Section 1983 does not support a cause of action against supervisors for the wrongs of their subordinates. *Id*. The evidence before the Court, in the light most favorable to Plaintiff, suggests that Nurse Millwee, as Director of Nursing, failed to implement proactive procedures to ensure that medical treatment remained constant for prisoners transferred from other facilities. *See* Deposition of Paula Millwee, doc. #36-9, pp. 18-19.

"Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (citations omitted). A reasonable jury could find that there was a lapse in treatment of Plaintiff's JRA upon his arrival to DWCC. *See* Deposition of Plaintiff, doc. #36-7, p. 17, lines 2-24; Intra-Institutional Health Screening, doc. #34-5, p. 2. A jury could find that soon after arriving to DWCC, Plaintiff's JRA flared-up causing him significant pain and temporary vision loss. *See*

12

Deposition of Plaintiff, doc. #36-7. However, Plaintiff submitted no medical records or expert testimony opining that this lapse in treatment caused the flare-up and no evidence either that Defendant appreciated the seriousness of Plaintiff's situation or intended for him to suffer. Accordingly, no reasonable jury could conclude that Defendants' actions rose to the level of infringing on Plaintiff's Constitutional rights.

In the end, the fact that Plaintiff does not believe that his medical treatment was as swift or comprehensive as it could have been is not a cognizable complaint under the Civil Rights Act. Prisoners are not entitled to the "best medical care money can buy." *See Mayweather, supra*; *Woodall v. Foti*, 648 F.2d 268 (5th Cir. 1981); *Barrett v. Mississippi Dept. of Corrections*, 427 Fed. Appx. 349 (5th Cir. 2011) (inmate's argument that medical staff did not use the most efficacious method of treatment, e.g., performing surgery earlier, does not establish a claim of deliberate indifference) (citation omitted); *Haddix, supra* (occasional denial of pain medication for preexisting back pain does not show substantial risk of serious harm); *Stockwell v. Kanan*, 442 Fed. Appx. 911, 914 (5th Cir.2011) (continuing back pain is not a constitutional violation when the deficiencies in care are minimal).[4]

**II.     Defendants Are Entitled To Qualified Immunity**

When, as here, Plaintiffs seek money damages from government officials in their individual capacities under § 1983, the affirmative defense of qualified immunity is available to protect defendants "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 815 (2009) (citing *Harlow v.*

---

[4] Having determined that Plaintiff failed to adduce sufficient evidence to support a claim for inadequate medical care against the named defendants in their individual capacities, the court need not determine whether any such right was clearly established in 2015. Case law, however, confirms that it was. *See Easter v. Powell*, 467 F.3d 459, 465 (5th Cir.2006).

*Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727 (1982)). The qualified immunity doctrine balances two often conflicting interests — "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* As such, "[t]he protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id.* (citations omitted). In effect, qualified immunity "gives ample room for mistaken judgments by protecting "all but the plainly incompetent or those who knowingly violate the law." *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000) (citing *Malley v. Briggs*, 475 U.S. 335, 343, 341, 106 S. Ct. 1092 (1986) (internal quotation marks omitted).

Qualified immunity is nominally characterized as an affirmative defense. However, once raised by defendants, it devolves upon plaintiffs to negate the defense by showing that the officials' conduct violated clearly established law. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir.2008) (citation omitted). Plaintiff's burden is two-pronged. *Club Retro LLC v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (quoted sources omitted). First, plaintiff must demonstrate that the defendant violated a constitutional right under current law. *Id.* "Second, [plaintiffs] must claim that the defendant[s'] actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." *Id.* (quoted source and internal quotation marks omitted). The courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) (citation omitted).

For purposes of qualified immunity's first prong, the court observes that, "[t]o state a claim under § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or

laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Leffall v. Dallas Independent School District*, 28 F.3d 521, 525 (5th Cir. 1994). Moreover, in order to plead a § 1983 cause of action, a plaintiff "must establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation." *James v. Texas Collin County*, 535 F.3d 365, 373 (5th Cir. 2008). Thus, a successful § 1983 claim "must enunciate a set of facts that illustrate the defendants' participation in the wrong alleged." *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986).

Having already addressed the substance of Plaintiff's Eighth Amendment claim, the undersigned likewise concludes that Plaintiff failed to present any evidence that his constitutional rights were violated, and certainly not deliberately so. Accordingly, the undersigned concludes, Defendants are entitled to qualified immunity on Plaintiff's claims.

## Conclusion

For the reasons set forth above, the undersigned finds that there is no genuine dispute as to a material fact as to certain federal law claims, as follows,

IT IS RECOMMENDED that Defendants' motion for summary judgment [doc. # 34] be GRANTED, DISMISSING WITH PREJUDICE Plaintiff's 42 U.S.C. § 1983 claims against movants.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.C.P. Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a

final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 5th day of March 2018.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE